LANGFORD *et al.,* administrators, *v.* NABERS *et al.*.
HUBBARD *et al. v.* BROOKS *et al.*

To open a decree that an intestate made no advancements to any of ·
his children in his lifetime, a newly discovered "memorandum of
donations" to his children, in his handwriting and dated twenty-
five years before his death, but to which he had never called the
attention of any of his family, is not sufficient.

December 23, 1890.

   v 86-29

Evidence. Advancements. Gifts. Before Judge
WELLBORN. Hall superior court. January adjourned
term, 1890.

In 1886 Langford and Hubbard, as administrators of
D. K. King, by their bill alleged that King when he
died left a considerable estate, and left as his heirs at
law thirteen children and representatives of children,
naming them, one of them being Mrs. Hubbard and
another Mrs. Langford; that the administrators had
paid all the debts of the estate and had paid the widow
her year's support, and she had taken dower; that they
had on hand for distribution among the heirs a consid-
erable sum of money, but some of the heirs complained
that the deceased in his lifetime made to certain of his
children advancements greatly in excess of what he ad-
vanced to others, and that all the children should be
made equal before any division of the estate is made,
while others of the heirs insisted that such property as
they received from their father in his lifetime was a
gift and not an advancement, and that the money in
the administrators' hands should be divided equally be-
tween the heirs; that acording to the best of the knowl-
edge, information and belief of the administrators, the
children of the deceased received from their father in
his lifetime various sums and property (setting them
forth, the statement made showing that some of the
children received much more than others, Mrs. Hub-
bard and Mrs. Langford being among those who re-
ceived least); that the administrators had not found
among the effects of deceased any entry or charge
against any of the children as advancements or gifts,
but, on account of the complication mentioned, were at
a loss to know what to do, and so prayed for decree
requiring that each of the children or representatives
of children answer what money or property he or she
received from deceased in his lifetime, and interplead

touching their various claims, and directing the administrators touching the distribution of the estate, and determining the question as to advancements. The answers of the different defendants all denied that any gift received from King was by way of advancement. Some of them alleged that King did not keep any memorandum of what he had given to them, nor did he ever charge or intend to charge them with such things as advancements. One insisted that each of the heirs should account for whatever they might have received, so that each might receive only an equal amount after accounting. From the various answers it appeared that King gave to Mrs. Hubbard $150 in cash; to Mrs. Langford a mule, two cows and a calf; to Mrs. Espy a small negro girl, a colt and a cow; to David King something, but how much did not appear; to Mrs. E. Gilmer a negro, a horse and $30; to Mrs. M. Gilmer $120; to Mrs. Martin (whose children are parties) a negro; to Mrs. Nabers a cow and calf, a horse, a pig, two sheep and a bee-gum; to Mrs. Gwinn $150; to Mrs. Brooks $200; and to Mrs. Sewell a horse, a cow, a small negro boy, and an old mule. As to various household goods which it was charged that the defendants had received, they generally alleged that such goods were the product of their own work and belonged to them.

On February 25, 1887, it was decreed that King made no advancements to any of his children in his lifetime, to be charged as such in the distribution of his estate, and that the estate in the hands of the administrators, after paying debts, etc., should be equally divided among the heirs at law.

In January, 1888, the administrators filed another petition, in which they alleged that on the 23d of December, 1887, they had discovered a memorandum-book containing the following entries in the handwriting of the deceased:

"April 16th, 1859.

"A memorandum of donations made by D. K. King to his children :

| | | |
|---|---|---|
| John S. Arnold..................... ......$225 | 00 |
| Cicero C. Brooks..................... · · · · .... 225 | 00 |
| do .....................·............ 75 | 00 |
| do ...................:.. .... 100 | 00 |
| Also one mule.....................100 00 |
| John N. King............................. 500 | 00 |
| I. J. Martin. ........................... 600 | 00 |
| April, 1859. |
| James Sewell.......................... 700 | 00 |
| Also one mule.......................·.......... 75 | 00 |
| November, 1859. |
| Winey E. Gilmer....................... 650 | 00 |
| December 12, 1859. |
| James M. King............................. 437 | 50 |
| David King............................. 437 | 50." |

The administrators believe, as do others who have seen these entries, that the deceased meant, by donations to his children, that he had delivered to them the respective sums intending that each of his children not mentioned should receive a like amount before those mentioned should receive more, especially in view of the fact that he did give to each of his children $150 of which he made no entry in the book. This book was found in the home of the deceased in the possession of his widow, who thought it was the records of a church of which he was a member and keeper of the records. The heirs at law who are not mentioned in it as having received any sum from deceased, have notified the administrators not to make any further distribution in pursuance of the decree, but to require the heirs at law mentioned in the book to account for the sums charged to them. The prayer is that, if it be determined that the book-entries are evidence of legal advancements to be accounted for by those against whom they appear, the former decree be so modified as to conform to the facts.

Mrs. Hubbard and Mrs. Langford filed answers in the nature of cross-bills, alleging their belief that the deceased fully intended that said donations should be held and charged against all said children as advancements out of his estate; that he would not have charged anything to his children that they did not get, nor would he have charged any more than the property was worth; and that each of the children mentioned in the memorandum received, in addition to the amount therein charged, as much as the property received by Mrs. Hubbard and Mrs. Langford each, who pray that those mentioned in the memorandum be compelled to account for all the property charged to them in the memorandum, and be decreed to refund to plaintiffs all money that they have received from them over and above their *pro rata* share, after accounting fully for the advancements, and that Mrs. Hubbard and Mrs. Langford each receive her distributive share according to equity and good conscience.

The bill and cross-bills were dismissed, and exceptions were taken.

J. B. Estes, for the administrators.

Perry & Dean and Harrison & Peeples, for plaintiffs in cross-bill.

W. L. Marler, M. L. Smith, S. C. Dunlap and G. K. Looper, for defendants.

Simmons, Justice.

Under the facts as alleged in the pleadings in this case, the court did not err in dismissing the bill. The newly discovered evidence consists of certain entries made by King, the father of the litigants, in a memorandum-book which was found after the decree was rendered on the first trial of the case. That memorandum is headed: "April 16th, 1859. A memorandum of donations made by D. K. King to his children." Then follow several entries of donations made to his

different children in April, November and December, 1859. This on its face appears to be a memorandum of gifts made by the father to his children, instead of advancements. He calls it a "donation" and not an "advancement." See Code, §2580. There is no other fact alleged in the bill which would tend to show that the father intended this as an advancement, except it is alleged that the other amounts received by his children in the first bill were not charged in this memorandum or in any other writing which had been found. It is claimed, however, by counsel for the plaintiffs in error that this was a matter to be submitted to the jury and not a matter to be decided by the judge. If he had submitted it to the jury, it is not certain or sure, under the allegations in the bill, that the jury would have found that the amounts entered in this memorandum were intended as advancements and not as gifts. The court was as fully competent to determine whether the word donations meant advancements, as the jury would have been. This memorandum having been made in the year 1859, and the father having lived (as we can infer from the pleadings in the case) up to the year 1884 or '5, and never having called the attention of his family to the memorandum,—taking this fact and all other facts as disclosed by the pleadings into consideration,—we think the court did right in dismissing the bill and in allowing the first decree in the case to stand.

The bill filed by the administrators to open the decree in this case having been properly dismissed, there was no error in dismissing the answers of two of the defendants, filed by them in the nature of cross-bills.

*Judgment affirmed.*